UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE R.,[1] <br><br> Plaintiff <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-09809-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

Plaintiff Jeanne R. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB").  The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 9 and 13] and briefs addressing disputed issues in the case [Dkt. 15 ("Pl. Br."), Dkt. 16 ("Def. Br.") and Dkt. 17 ("Reply")].  The matter is now ready for decision.  For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

---

[1]    In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

## II.   ADMINISTRATIVE DECISION UNDER REVIEW

On January 12, 2017, Plaintiff filed her application for DIB alleging disability due to problems with her hands and mental impairments including PTSD, depression, anxiety, and OCD.  [Dkt. 11, Administrative Record ("AR") at 275.] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Roger E. Winkelman.  [AR 1-6, 11-26.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled.  *See* 20 C.F.R. §§ 416.920(b)-(g)(1).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date.  [AR 13.]  At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, cervical degenerative disc disease, status post excision of a portion of her left small finger, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder [AR 13.]  The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  [AR 14.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work.  [AR 15.]  Applying this RFC, the ALJ found at step four that Plaintiff was not able to perform her past relevant work as a vice president, accounting manager, or office manager.  [AR 24].  However, at step five, the ALJ found that Plaintiff was capable of performing other work that exists in significant numbers in the economy.  [AR 25-26.]  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  [AR 1-6.]  This action followed.

On appeal of the ALJ's decision, Plaintiff raises the following arguments: (1) the ALJ failed to accurately evaluate the mental impairment evidence and (2) the ALJ failed to properly evaluate her subjective symptom testimony.  [Pl. Br. at 4-11; Reply at 1-7.]  Plaintiff requests reversal and remand for payment of benefits or, in

2

the alternative, remand for further administrative proceedings.  [Pl. Br. at 11.]  The

Commissioner asserts that the ALJ's decision should be affirmed.  [Def. Br. at 1-

11.]

## III.    GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to

determine if: (1) the Commissioner's findings are supported by substantial evidence;

and (2) the Commissioner used correct legal standards.  *See Carmickle v. Comm'r*

*Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec.*

*Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted).

"Substantial evidence is more than a mere scintilla but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir.

2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is

susceptible to more than one rational interpretation.  *See Molina v. Astrue*, 674 F.3d

1104, 1110 (9th Cir. 2012).  However, the Court may review only the reasons stated

by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he

did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not

reverse the Commissioner's decision if it is based on harmless error, which exists if

the error is "inconsequential to the ultimate nondisability determination, or if despite

the legal error, the agency's path may reasonably be discerned."  *Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations

omitted).

## IV.    DISCUSSION

### A.    The ALJ Improperly Assessed the Medical Evidence

Plaintiff contends that the ALJ erred by rejecting the mental impairment

opinions provided by her treating physicians and the consultative examining

psychologist without providing specific and legitimate reasons supported by

3

1   substantial evidence.   [Pl.'s Br. 4-10.]   According to Plaintiff, the ALJ "cherry-
2   picked" the medical evidence while rejecting the opinions that supported her
3   allegations of disability.  The Court agrees and finds that remand on this issue is
4   warranted.

5        **1.   Legal Standard**

6        "There are three types of medical opinions in social security cases:  those
7   from treating physicians, examining physicians, and non-examining physicians."
8   *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also*
9   20 C.F.R. § 404.1527.  In general, a treating physician's opinion is entitled to more
10  weight than an examining physician's opinion and an examining physician's opinion
11  is entitled to more weight than a nonexamining physician's opinion.  *See Lester v.*
12  *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "The medical opinion of a claimant's
13  treating physician is given 'controlling weight' so long as it 'is well-supported by
14  medically acceptable clinical and laboratory diagnostic techniques and is not
15  inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v.*
16  *Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[2]

17       An ALJ must provide clear and convincing reasons supported by substantial
18  evidence to reject the uncontradicted opinion of a treating or examining physician.
19  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at
20  830-31).  Where such an opinion is contradicted, however, an ALJ may reject it only
21  by stating specific and legitimate reasons supported by substantial evidence.

22

23  _____

24  [2]        For claims filed on or after March 27, 2017, the opinions of treating
    physicians are not given deference over the opinions of non-treating physicians.  *See*
25  20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not
    defer or give any specific evidentiary weight, including controlling weight, to any
26  medical opinion(s) or prior administrative medical finding(s), including those from
    your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  Because
27  Plaintiff's claim for DIB was filed before March 27, 2017, the medical evidence is
    evaluated pursuant to the treating physician rule discussed above.  *See* 20 C.F.R. §
28  404.1527.

4

*Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675.  The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

### 2.    Pertinent Mental Impairment Evidence

#### i.    <u>Treating Physicians - Dr. Lichuan Fang</u>

Plaintiff began treating with Dr. Fang, a family physician, for routine medical care beginning in January 2016.  [AR 562.]  The ALJ summarized Dr. Fang's treatment as follows: in January 2016, Plaintiff had a normal annual physical and psychiatric examination.  [AR 18.]  It was noted that she was seeing a psychiatrist (Dr. Winston) once every two months for depression.  No functional limitations were imposed.  [AR 562-564.]  In February 2016, a physical examination was unremarkable and an EEG was normal.  A larynoscopy was negative and Plaintiff had a largely normal EKG, colonoscopy, and mammogram.  A June 2017, cervical x-ray revealed disc disease and spur formation, but no evidence of herniation, fracture, or impingement.

In June 2018, Dr. Fang completed a functional capacity questionnaire.  He stated that he had seen Plaintiff on an annual and as needed basis since January 2016.  [AR 18.]  He diagnosed major depressive disorder, anxiety disorder, and post-traumatic stress disorder.  Due to these impairments, he opined that Plaintiff was incapable of even low stress jobs, and she would be unable to perform sedentary work.  [AR 1342-1343.]

5

1    The ALJ rejected Dr. Fang's mental assessment as "unpersuasive" for several
2  reasons including (1) Dr. Fang did not include a narrative discussion of the clinical
3  mental health evidence to support his diagnosis; (2) he checked answers to form
4  questions and did not support his conclusions with objective findings; (3) he is not a
5  psychologist or psychiatrist; and (4) he acknowledged that his treatment had been
6  infrequent.  [AR 18.]

7              ii.    Treating Physician - Dr. Dustin DeYoung
8    Plaintiff saw Dr. DeYoung, who shares a practice with Dr. Fang, monthly
9  beginning in August 2017.  [AR 1336-1340.]  Dr. DeYoung did not provide any
10  treatment records, but he submitted a Mental Residual Functional Capacity
11  Questionnaire on Plaintiff's behalf.  [AR 1336.]  Dr. DeYoung diagnosed Plaintiff
12  with severe major depressive disorder, PTSD and general anxiety disorder.
13  [AR1336.]  Dr. DeYoung noted that Plaintiff has tried multiple medications and
14  combinations of medications to ameliorate her symptoms, but those medications
15  either caused side effects or were ineffective.  Dr. DeYoung's prognosis was that
16  Plaintiff had expressed symptoms for many years with minimal improvement due to
17  her treatment resistant symptoms.  [AR 1336.]  In a checkbox form, Dr. DeYoung
18  noted that Plaintiff had no useful ability to complete a normal workday and
19  workweek without interruptions nor deal with work stress.  In Dr. DeYoung's
20  opinion, Plaintiff's impairments would cause her to be absent more than four days
21  per month.  [AR 1340.]

22    The ALJ rejected Dr. DeYoung's opinion as "unpersuasive."  [AR 22.]
23  Specifically, the ALJ opined that Dr. DeYoung's "extreme functional limitations"
24  were "severely undermined by the lack of clinical findings" and the absence of a
25  narrative discussion of objective findings.  Further, Dr. DeYoung failed to provide
26  treatment records to support his conclusory opinion.  [AR 22.]

27              iii.    Treating Psychiatrist - Dr. Jason Winston
28    The records from Dr. Winston, Plaintiff's treating psychiatrist, showed

1    treatment for depression, anxiety, binge eating, and problems with focus.  [AR 653-

2    724.]  Over a series of progress notes, from May 4, 2015 to March 22, 2017,

3    Plaintiff regularly complained about poor memory and concentration, including that

4    she is easily distracted and forgetful.  [AR 653, 722.]  Dr. Winston's treatment

5    reports reveal that Plaintiff has had a long history of depression since around the

6    time she was 19 or 20. [AR 722.]  Her symptoms increased after the death of her

7    parents.  [AR 722.]  Dr. Winston frequently observed that Plaintiff was tearful, but

8    his mental status examinations consistently noted Plaintiff's attention, concentration,

9    and judgment as good.  [AR 654, 656, 662, 671, 675, 681, 683, 689, 716, 718, 720,

10    723.]  A significant portion of Dr. Winston's treatment reports documented the trial

11    and adjustment of Plaintiff's numerous psychiatric medications.  [AR 657 difficulty

12    with finding effective medication, "could not tolerate Buspar"; AR 660 could not try

13    Adderall until blood pressure under control; AR 661 "tapering Lamictal"; AR 669

14    "rexult didn't help."]

15        Dr. Winston did not complete a medical impairment questionnaire or

16    otherwise provide an opinion about Plaintiff's functional limitations.  However, the

17    ALJ credited Dr. Winston's treatment reports as persuasive because (1) they were

18    supported by the weight of the mild mental health evidence of record; (2) the

19    numerous mental examinations of Plaintiff were consistent; (3) the treatment reports

20    failed to reveal significant clinical findings; and (4) his reports revealed Plaintiff's

21    high level of functioning.  [AR 22.]

22            iii.    Treating Therapist – Ms. Daniella Schrader, Psy. D.

23        Ms. Schrader began seeing Plaintiff weekly for her depression, anxiety, and

24    obsessive-compulsive disorder (OCD) in February 2015.  [AR 640.]  Ms. Schrader

25    is a licensed psychologist and therefore is an accepted medical source.  [Reply at

26    4.][3]  In March and July 2017 and July 2018 she wrote a total of three letters stating

27    ─────────────

28    [3]    See 20 C.F.R. § 416.902 ("(a) Acceptable medical source means a medical
     source who is a: . . . (2) Licensed psychologist); *see also Lubin v. Commr. of Soc.*

1    that Plaintiff's stress worsened around May 2016 and that "ongoing stressors at

2    work" caused clinical setbacks resulting in worsening symptoms of depression,

3    anxiety, and OCD.  [AR 640-41, 1111-12, 1366.]  Plaintiff's OCD is triggered while

4    at work as she fears she is making mistakes, being critiqued and criticized, and

5    therefore she engages in perfectionistic behavior causing paralyzing thoughts which

6    further impairs her functionality.  [AR 640.]  Ms. Schrader stated that Plaintiff's

7    panic attacks, bouts of uncontrolled outburst of crying, difficulty sleeping and

8    unhealthy eating patterns made it unlikely she could function in a workplace.  [AR

9    640-41, 1111-12, 1366.]

10          In July 2018 Ms. Schrader completed a mental residual functional capacity

11    questionnaire.  [AR 1346-1350.]  Ms. Schrader reported that due to Plaintiff's

12    ongoing struggles with focus and concentration she would be unable to complete a

13    normal workday/workweek without interruptions from psychologically based

14    symptoms.  [AR 1348.]  She would be likely to miss work more than four days per

15    month.  [AR 1350.]

16          The ALJ rejected the "assessed functional limitations by Ms. Schrader" as

17    "not persuasive."  The ALJ found that "most mental health resources did not report

18    significant objective mental findings and therefore her conclusions were not

19    supported by clinical evidence."  [AR 20.]  The ALJ also found that the letters

20    submitted by Ms. Schrader did not discuss objective findings such as test results.

21    The July 2018 mental residual functional capacity form was not supported by any

22    narrative discussion of mental health evidence to support the conclusion and "she

23    checked answers to form questions, which was additionally "unpersuasive."  [AR

24    20.]

25    ///

26

27    *Sec. Admin.*, 507 Fed. Appx. 709, 712 (9th Cir. 2013) (unpublished) ("as a licensed

28    psychologist, Dr. Shields is an 'acceptable medical source[]' within the meaning of
      20 C.F.R. § 416.913(a)").

iv.   <u>Examining Psychologist – Dr. Henry Venter, Ph. D.</u>

On April 15, 2017, Dr. Venter, a clinical psychologist performed a Comprehensive Psychological Evaluation of Plaintiff.  [AR 988-999.]  Dr. Venter noted that Plaintiff drove to her appointment.  She presented with neat and clean clothes.  During the evaluation, Plaintiff explained to Dr. Venter that after finishing high school, she completed 5 years of college at different institutions including UC Santa Barbara and Cal State Northridge, however Plaintiff never graduated. Plaintiff worked as office/account manager for 9 years until April 2016 when she stopped working due to a combination of physical and psychological symptoms. Before she quit work, she asked for a reduction in some of her tasks due to stress and feelings of being overwhelmed.  Since she stopped working, Plaintiff's symptoms have not improved.  [AR 989.]  Plaintiff explained that her current psychiatric treatment included psychotherapy with her psychiatrist Dr. Winston and her therapist Daniella Schrader.  Plaintiff also takes psychotropic medication including Sertraline and Trazadone for depression and anxiety.  [AR 990.]

Upon examination, Dr. Venter observed that Plaintiff's thought process was "not coherent and disorganized."  [AR 992.]  She presented as "discombobulated and disorganized, often interrupting herself and the examiner."  [AR 991-992.]  Dr. Venter diagnosed "Bipolar I disorder, Most Recent Episode, Depressed, Severe, marked by the following symptoms: mania—distinct periods of abnormally and persistently elevated, expansive, or irritable mood, lasting at least 1 week; inflated self-esteem or grandiosity; decreased need for sleep (feel rested after only 3 hours of sleep); more talkative than usual or pressure to keep talking; flight of ideas or subjective experience that thoughts are racing; distractibility (attention easily drawn to unimportant or irrelevant external stimuli); increase in goal-directed activity (socially, at work, school) or psychomotor agitation; alternating periods of severe depression and low mood with inability to engage in proactive activities.  [AR 996-997.]

9

Overall, Dr. Venter opined that Plaintiff was moderately impaired in her ability to (1) relate and interact with coworkers and the public, (2) maintain concentration, attention, persistence and pace, (3) maintain regular attendance; and (4) associate with day-to-day work activity including attendance and safety. Plaintiff had a mild impairment in her ability to do (5) detailed and complex instructions, (6) accept instructions from supervisors, and (7) perform work activities without special or additional supervision. Plaintiff has no impairment in her (8) ability to understand, remember and carry out simple one or two-step job instructions. [AR 997.]

The ALJ rejected Dr. Venter's opinion as "not persuasive" largely due to Dr. Venter's bipolar diagnosis. The ALJ noted that no other physician or treating professional diagnosed Plaintiff with bipolar disorder, and that Dr. Venter's opinion was inconsistent with his own mild findings, as well as the overall mild findings in the record. [AR 22.]

v.      Non-Examining Physicians

In May and August 2017, the Agency's non-examining physicians reviewed Plaintiff's application for DIB and rendered their opinions. [AR 314-332, 334-354.] The reviewing physicians diagnosed carpal tunnel syndrome, depressive disorder, eating disorder, and attention deficit hyperactivity disorder. They opined that Plaintiff has a moderate impairment in the ability to interact with others, concentrate persist, or maintain pace and adapt or manage herself. Plaintiff also has a moderate limitation in her ability to maintain attention and concentration for extended periods, perform activities without a schedule, maintain regular attendance, be punctual, work in coordination with or in proximity to others, complete a normal workday/week without interruption from psychological symptoms, interact with the public, accept instructions and respond appropriately to supervisors, get along with coworkers, maintain socially appropriate behavior, and respond appropriately to changes in the work setting. [AR 328, 350.] Plaintiff, however, has a mild

10

1    impairment in her ability to understand, remember or apply information.

2           The ALJ found the opinions of the non-examining physicians persuasive

3    because "they reviewed all of the medical records and reported modest physical and

4    mental health findings" and their opinions were "consistent with the mild objective

5    medical evidence."  As a result, the ALJ adopted the non-examining physicians'

6    functional limitations.  [AR 23.]

7           **3.    Analysis**

8           As a part of and in addition to weighing the overall medical evidence, the ALJ

9    also noted that Plaintiff's allegation of disability was severely damaged by the

10   acknowledgements in the record regarding Plaintiff's "highly active lifestyle" since

11   the alleged onset date.  [AR 23.]  The ALJ explained that multiple medical sources

12   noted that Plaintiff had been applying for jobs, interviewing for jobs, receiving job

13   offers, shopping frequently, attending dance and exercise classes, traveling,

14   vacationing, and driving to daily medical appointments and support group meetings.

15   [AR 23-24.]  The ALJ found that Plaintiff's ability to complete these extensive

16   activities "without difficulty" was inconsistent with her disability claim.  [AR 24.]

17          Despite what is undoubtedly an unusually active lifestyle for a benefits

18   claimant, the expert assessments made by the overwhelming majority of the medical

19   practitioners in this case were entitled to greater weight and more careful

20   consideration than the ALJ afforded them for several reasons.  *See Tonapetyan v.*

21   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that examining physician's

22   "opinion alone constitutes substantial evidence, because it rests on his own

23   independent examination of [claimant]"); *see also* 20 CFR § 404.1527

24   (f)(2)(i)("State agency medical and psychological consultants and other program

25   physicians, psychologists, and other medical specialists are highly qualified

26   physicians, psychologists, and other medical specialists who are also experts in

27   Social Security disability evaluation.").

28

1     First, the ALJ's reliance on Plaintiff's activities of daily living outside of the

2  context *of competitive* work here is based on an inaccurate characterization of the

3  overall record.  A conflict between a treating physician's opinion and the claimant's

4  daily activities "may justify rejecting a treating provider's opinion." *Ghanim v.*

5  *Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (considering inconsistency between

6  treating physician's opinion and claimant's daily activities as specific and legitimate

7  reason to discount treating physician's opinion)).  However, Plaintiff's daily

8  activities are not in tension with the opinions of her treating providers.

9     Here, Plaintiff's treatment records described ongoing difficulty with her

10 mental health symptoms during her daily activities.  As the ALJ observed, Plaintiff

11 regularly attended fitness classes and looked for work.  But Plaintiff struggled

12 significantly in these endeavors including having a "meltdown" with "tears

13 streaming down her face" during her tap class because she became overwhelmed by

14 the instructions.  [AR 657, 684.]  When Plaintiff was working, she switched from

15 full-time to part-time work due to stress and she eventually quit because she was

16 unable to manage her stress and anxiety.  [AR 714.]  Although Plaintiff reported that

17 she was searching for "part-time" jobs, she stated the search was "not going well,"

18 "that she can't get another job in the mindset [she's] in now," and when she went on

19 an interview, she had difficulty speaking because of anxiety.  [AR 666, 692, 702.]

20 Plaintiff felt that she did not get the job due to her inability to focus and "poor

21 performance during the interview." [AR 692.]  With respect to her tax work, she

22 volunteered to help a friend who was a farmer with some accounting, but when it

23 came to actually doing the work, she testified that she "was so stressed out" that she

24 could not complete it. [AR 274.]  When doing daily tasks, Plaintiff reported that

25 "there are so many things to remember, this causes anxiety, she writes it down, then

26 forgets where she wrote it down, books appointments for the wrong time, forgets

27 things." [AR 686.]  Plaintiff also reported that she was no longer able to go to the

28 store alone because her shopping is "totally out of control."  [AR 686.]

When reading the record in context, it is apparent that the ALJ mischaracterized Plaintiff's activities.  Plaintiff suffered the same problems with focus, concentration, and inability to deal with even low stress situations in both her daily activities and the work like activities projected by her treating and examining practitioners.   Therefore, the ALJ erred by sweeping aside the daily activity evidence supporting the treating and examining opinions while isolating only those findings supporting his conclusion.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion); *Diedrich v. Berryhill*, 874 F.3d 634, 642-43 (9th Cir. 2017) (ALJ erred by relying on evidence indicating an ability to function while "ignoring competent evidence in the record that suggests an opposite result."); *see also Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," she cannot simply selectively choose evidence in the record that supports her conclusions).

Second, the record does not support the ALJ's conclusion that the opinions of Dr. Fang, Dr. Venter, Dr. DeYoung, and Ms. Schrader, were inconsistent with the "mild physical and mental health findings" and unsupported by clinical findings. [AR 18-22.]  The record documents Plaintiff's lengthy history of mental illness. While Plaintiff's symptoms have not always been susceptible to objective verification, as is often the case with mental illness, *see Smith v. Colvin*, 2015 U.S. Dist. LEXIS 52366, 2015 WL 1814433, at *6 (N.D. Cal. April 21, 2015) (mental impairments are not as readily amenable to objective laboratory testing as are physical impairments), the record contains strong objective and consistent findings related to Plaintiff's mental impairments and related functional limitations.

For example, Plaintiff regularly presented at a myriad of medical appointments as depressed, anxious, and tearful.  In the treatment records provided by Dr. Winston, which the ALJ agreed were persuasive, Plaintiff was tearful when

expressing stressful events (AR 655), was forgetful with respect to taking medication (AR 656), her focus was off (AR 657), she struggled to handle the stress of her tap dancing class (AR 657), and she complained of being frequently overwhelmed (AR 664). Even the Agency's own examining physician, Dr. Venter stated that Plaintiff "cannot focus attention during the interview" and her "attention and concentration were noticeably impaired." [AR 991.] In the capacity questionnaire submitted by Dr. DeYoung he expressed that Plaintiff is easily distracted, has memory impairments, recurrent panic attacks, and difficulty thinking and concentrating, all despite "treatment for many years with minimal improvement." [AR 1336-1337.] Ms. Schrader stated that Plaintiff's panic attacks, bouts of uncontrolled outburst of crying, difficulty sleeping and unhealthy eating patterns made it unlikely she could function in a workplace. Collectively, all of the treating and examining practitioners assessed that Plaintiff had difficulty maintaining focus, concentration, and attendance. [AR 998, 1340.] The weight of the record is, therefore, supportive of the treating and examining opinions.

By the same token, the ALJ erred in crediting the opinions of the non-examining physicians over the treating and examining opinions. It is well established that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (9th Cir. 1995); *see also Revels v. Berryhill*, 874 F.3d 648 at 654-55 (9th Cir. 2017); *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993). Furthermore, greater weight is due to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(c)(5); *Revels*, 874 F.3d at 654. This the ALJ did not do.

While Drs. Fang, DeYoung, Venter and Ms. Schrader were Plaintiff's treating and examining practitioners who personally treated and/or evaluated her mental

14

1    impairments, the ALJ rejected their opinions as unpersuasive.  [AR 18, 20, 22.]

2    Instead, the ALJ gave greater weight to the opinions of the non-examining

3    physicians who had no personal interaction with Plaintiff.  [AR 23.]  However,

4    without clear and convincing evidence, the ALJ should have given the least weight

5    to non-examining physicians' opinions, rather than discounting the opinions of

6    Plaintiff's treating and examining physicians.  *See Andrews v. Shalala*, 53 F.3d

7    1035, 1040-41 (9th Cir. 1995) (observing that more weight is given to the treating

8    physician's opinion than the opinion of a nontreating physician because a treating

9    physician is employed to cure and has a greater opportunity to know and observe the

10   patient as an individual); *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)

11   (discussing that the conclusion of a non-examining physician is entitled to less

12   weight than the conclusion of an examining physician (*citing Gallant v. Heckler*,

13   753 F.2d 1450, 1454 (9th Cir. 1984)).

14          Here, the ALJ's reliance on the opinion of physicians who neither treated nor

15   examined Plaintiff over an examining physician and the reports of several treating

16   physicians was not based on substantial evidence.  As a result, the ALJ erred in

17   weighing the evidence here and remand is warranted.

18   **B.     Remaining Arguments**

19          Plaintiff also challenges the ALJ's credibility finding.  Because the matter is

20   being remanded for further proceedings, the Court will not reach this argument.

21   However, on remand, if Plaintiff's testimony regarding her subjective complaints is

22   discredited, the ALJ must, in the absence of affirmative evidence showing that

23   Plaintiff malingering, set forth clear and convincing reasons for rejecting Plaintiff's

24   testimony.  *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th

25   Cir.1999).

26   ///

27   ///

28   ///

15

1

## V.    CONCLUSION

2       The decision of whether to remand for further proceedings or order an

3  immediate award of benefits is within the district court's discretion.  *Harman v.*

4  *Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful purpose would be

5  served by further administrative proceedings, or where the record has been fully

6  developed, it is appropriate to exercise this discretion to direct an immediate award

7  of benefits.  *Id.* at 1179 ("the decision of whether to remand for further proceedings

8  turns upon the likely utility of such proceedings").  But when there are outstanding

9  issues that must be resolved before a determination of disability can be made, and it

10 is not clear from the record the ALJ would be required to find the claimant disabled

11 if all the evidence were properly evaluated, remand is appropriate.  *Id.*

12      Here, the Court finds that remand is appropriate because the circumstances of

13 this case suggest that further administrative review could remedy the ALJ's errors.

14 *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative

15 determination, the proper course is remand for additional agency investigation or

16 explanation, "except in rare circumstances"); *Treichler v. Comm'r of Soc. Sec.*

17 *Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is

18 inappropriate where "there is conflicting evidence, and not all essential factual

19 issues have been resolved"); *Harman*, 211 F.3d at 1180-81.  The Court has found

20 that the ALJ erred by failing to provide specific and legitimate reasons for

21 discounting the treating and examining opinions.  Therefore, Plaintiff's entitlement

22 to benefits remains unclear and remand for further administrative proceedings would

23 be useful.

24      For all of the foregoing reasons, **IT IS ORDERED** that:

25 (1) the decision of the Commissioner is REVERSED and this matter

26     REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

27     administrative proceedings consistent with this Memorandum Opinion and

28     Order; and

16

1       (2) Judgment be entered in favor of Plaintiff.

2

3      **IT IS SO ORDERED.**

4

5    DATED: August 12, 2020               _____

6                              GAIL J. STANDISH

7                              UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28